John Pen by his Will Jan. 13. 1676. devises thus “ I give & “ bequeath to Ann Sharpe my Plantation &c ” (the Premes in Question) And after other Bequests follows this Clause “ And “ for my Land w’ch I have given to Ann Sharpe if it should “ please God to die without Issue I give to my Friend Tho’s “ Harwar Otherwise to she & her Heirs forever”
The Question is What Estate Ann Sharpe took by this Devise Whether an Estate tail or a Fee simple upon the Contingency of leaving Issue at her Death If the former the Pit. has a good Title Otherwise not
It must be agreed that by the first Part of this Devise Ann took only an Estate for Life And it will be further admitted I presume that if the second Clause had gone no further than the Limitation over to Harwar It would have been clearly an Estate tail in Ann The Doubt then & Difficulty if there is any in the Case must arise from these latter Words “ Otherwise to she & her Heirs forever ’’Whether these Words shew an Intention in the Testor to give any other Estate to Ann than would have passed by the first Words if these had not been added And I conceive not but that he intended an Estate tail & no other Estate to Ann
It is a common Doctrine that the Intent of the Testor is the *B311 Rule & Guide for expounding of Wills That this Intention is to be collected not from any particular Sentence or Clause but from the whole Will taken together And that to serve this Intention even Sentences are sometimes transposed
It is also a well known & settled Point that Issue in a Will always [289] imports & is taken to mean Heirs of the Body They are Terms equivalent & indeed are so taken in divers Acts of Parliam’t as Westm. 2. De Donis & 34. H. 8. of Intails settled by the Crown 1 Vent. 229
This being premised I shall proceed to consider the Devise before us The Testor when he first disposes of the Land to Ann limits no Estate And consequently she could take only an Estate for Life by that Part of the Devise as has been observed Then when he comes to enlarge this Estate for Life & give an Estate of Inheritance it is remarkable he makes Use of the Word “ Issue ” If she dies with’t Issue Rem’r over which is the same as if he had sayed with’t Heirs of the Body This I think plainly shews that the first & primary Intention of the Testor was to provide for Ann’s Issue as well as herself for it will be granted me that this Limitation over upon a Dying with’t Issue would make an Estate tail if the Will went no further 3 Danv. 180. 7. 9. 181. 12. 1 Vent. 229. FitzG. 12. 25.
It is indeed an Estate tail by Impl. only but then it is by a plain & necessary Impl. of the Testors Intention that the Issue sho’d have the Land till the Rem’r took Place And in a Will it is not material whether an Estate be given by Impl. or express Lim It is the Intent alone that is to be regarded So that there is really no Difference betw. a Devise to one & his Issue and a Devise to one & if he die with’t Issue Rem’r over Only in the first Case he has an Estate tail by express Lim & in the other by Impl. FitzG. 12.
If then this Devise be considered as a Devise to Ann & the Heirs of her Body or Issue which is the same I would ask whether when the Testor in the latter Part of the Clause comes to speak again of Ann & her Heirs It is not reasonable to suppose he meant the same Heirs he had just mentioned before If he did there is an End of all Doubt & Difficulty in the Case
And that he did mean the same Heirs I think may be fairly collected from the foil. Cons. 1. We know that in common speech Heirs are generally applied to a Persons Children If a Man leaves no Children it is common to say he left no Heirs And *B312 Words in a Will fire to be taken as they are understood in common Speech If then we can suppose that this Testator thought Issue & Heirs imported the same Thing It will account for his making Use of the Words Issue in one Place & Heirs in another For when Men have annexed the same Idea to two different Terms or Words They make Use of those Terms indifferently as they occur to Memory
2. Upon the Face of the Will it appears the Testor had an Intention to provide for Ann’s Issue as well as herself And this as has been observed seems to have been his first & primary Intention
3. There are many Cases in Law'where the Word Heirs in a Will [290] has been construed & interpreted to mean Heirs of the Body Especially where the Word Issue or Heirs of the Body have been likewise made Use of by the Testor in the same Will Some of w’ch Cases I shall briefly mention
Webb & Herring Cro. Ja. 115. 1 Ro. A. 836. 5. A man had a Wife a Son & 3 Daughters Devised Land to his Son after the Death of his Wife And if his 3 Daughters survive the Wife & the Son & his Heirs to them for their Lives This was adjudged an Estate tail in the Son & that Heirs must be intended Heirs of the Body (Because he could not die with’t Heirs gen’l living the Daughters
1 Ro. Ab. 836. 6. If a Man has Issue two Sons & devises Land to the younger and if he dies without Heirs to the elder the younger has an Estate tail for Heirs must be intended Heirs of the Body by Reason of the Rem’r over which would be otherwise idle because the elder would take the Land as Heir to his Brother without it
Nottingham a Jennings 1 Sal. 233. Devise to the younger Son & his Heirs forever And for Want of such Heirs then to his own right Heirs Adj’d an Estate tail in the Son for the Testor must mean Heirs of the Body because the Son could not die with’t Heirs gen’l living Heirs of the Father
King a Remball 1 Ro. A. 836. 7. A man devised Land to his 3 Dau’rs And if either dyed before the other the one to be the others Heir And if they all died with’t Issue Rem’r over Adj’d the Dau’rs had an Estate tail for the latter Clause if they die without Issue explains what Heirs were intended where it is sayed that one sho’d be Heir to the other
These Cases I think serve to prove two Points 1. that the *B313 Word Heirs in the Understanding of People unskilled in the Law or in Cotnon Speech as we say imports the same as Issue or Heirs of the Body and 2. that the Word Heirs in a Will is often taken to mean Heirs of the Body And the last Case proves further that where the two Terms Issue & Heirs are both made Use of in the same Devise It is taken that the same Heirs are meant in both Cases Indeed the common Case of a Devise to a Man & his Heirs & if he die with’t Issue Rem’r over puts this last Point beyond Contradiction for it was never denied but that such a Devise made an Estate tail And that Heirs in the first Part of the Devise sho’d be intended such Heirs as are mentioned afterwards viz. Issue.
And it is not material I take it whether Issue happens to be mentioned first or last. The Intention is collected from the Word more than the Manner of placing it As
A Devise to a Man & the Heirs of his Body And if he die with’t Heirs Rem’r over makes an Estate tail (2 Vern. 281. [291] per Cur.) tho Heirs of the Body are mentioned first & Heirs last for it is suppos’d the same Heirs are intended in both Places
Indeed the first Words in a Will are often taken as the best Expositors of the Testors Meaning and to serve as a Guide to those that follow as in Buck & Frenchmans Case 1. And. 8. (It is Tuck & Frenchman in Dy. 171) Devise to his Wife for Life Rem’r to his Cousin & the Heirs Male of his Body And if he dye with’t Issue (not saying male) Rem’r over Adj’d the Cousin had only an Estate in tail male for tho’ the latter Words If he die without Issue would make an Estate tail gen’l Yet Heirs Male being mentioned before shew the Intention what Heirs were meant In Godb. 16. It is sayed the same Point was adj’d betw. Glover & Tracy
Which last Cases prove that Issue or Heirs of the Body being named first or last does not differ the Case but a special Heir being once named it is reasonable to suppose the same is intended by the gen’l Term Heir And there may perhaps be this further Reason too for such a Constr. that by Heirs comon People generally intend Issue or Heirs of the Body.
But it will be objected to me I suppose that by this Constr. the latter Words in the Devise Otherwise to she & her Heirs forever are quite useless Ann would have had an Estate tail with’t them And it shall never be supposed a Man intends to make a fruitless Devise
*B314 I ans’r it is no -uncommon Thing to meet with Tautology & useless Repetitions in a Will Sometimes Words that are perhaps strictly unnecessary are added for the clearer Manifest’a of the Testors Meaning And sometimes & that very frequently thro’ the Unskilfulness of the Writer We are to consider that Wills are supposed to be made & indeed often are in Extremis In a Mans last Moments when he has not Opportunity for good Council or Advice & so are wrote by Men unskilled in the Law It is for this very Reason that so great a Latitude is allowed in the Constr. of Wills & strict & legal Forms dispensed with
Now these Words might be added either by the Direction of the Testor Ex abundanti to shew more explicitly his Intention to give Ann an Estate of Inheritance which she had only by Impl. before but then whether he did not mean the same kind of Inheritance he had mentioned before is what must be submitted
Or these Words might be added thro’ the Unskilfulness or Wantonness of the Writer cúrrente Cálamo as we say FitzG. 29. And supposing either of these to be the Case the Addition of them can weigh nothing
But taking this Obj. in its full Strength allowing these Words to be quite unnecessary to give an Estate tail to Ann which I must grant Yet on the other Hand if it be considered that here is an apparent Intention that the Issue of Ann sho’d have the Land it must be submitted [292] whether so plain an Intention ought to be defeated by a Constr. collected from Words the Meaning of which at best is doubtful Especially when another Constr. may be made of those Words consistent with the apparent Intention The Question in short is Whether it be better to follow Certainty or Doubt & Incertainty It is certain an Estate tail will pass by the first Part of the Devise It is at best but incertain what was intended by these latter Words
The Case of Banks & Banks (ante 283) heard the other Day in this Court cannot be forgot
I rely on the Limitation over to Harwar in Case Ann die with’t Issue as what makes an Estate tail in Ann The Words Dying with’t Issue where they are general & indefinite not circumscribed by Time nor tied up to any Contingency always make an Estate tail in a Will I grant there are many Cases where the Lim is upon dying without Issue before 21 or living another *B315 or without Issue living that in leaving Issue at his Death that it has been adj’d no Estate tail was created by those Words
Dying without Issue as Pell & Brown Cro. Jac. 590. which was a Devise to one Son And if he died with’t Issue living another Son Retn’r over Hall & Deering Flard. 148. Devise to one & his Heirs & if he die without Issue before 21. Rem’r over Collenson & Wright 1 Sid. 148. where the Rem’r is limited upon dying before 21. & without Issue living In all these Cases the 1. Devisee was adjudged to have a contingent Fee because the Dying without Issue could not be taken as Words of Lim being either circumscribed & limited to fall within a certain Time or tyed up to the Contingency of happening in the Life of another But I think I may venture to say that there is no Case where the Dying without Issue is absolute & indefinite as here that these Words have been taken as Words of Contingency or to speak more properly as Words of Determination but have always been taken to be Words of Lim either to enlarge or qualifie the Estate given before I make Use of the Word Determination in Opposition to Lim The latter has been just explained By the form’r I mean where the Dying without Issue is constr. to be only an Indication of the Testors Mind when he would have a particular Estate given before determine & another Estate given afterwards commence As in the Case just now cited of a Devise to one & his Heirs And if he die without Issue before 21 Rem’r over Here the Devisee has an Estate in Fee determinable upon his dying with’t Issue before 21. If he dies before that Time his Estate determines & the Rem’r commences And so in most of the Cases upon this Subject the Question is whether Dying without Issue are to be considered as Words of Lim or of Determ. Hard. 148.
[293] Now to consider the Case before us in this View whether Dying without Issue are to be taken as Words of Lim or of Determ It will I think be pretty evident they could never be intended the latter for by the 1. Part of the Devise Ann has only an Estate for Life And if Dying without Issue are construed as Words intended to shew when that Estate sho’d determine this Absurdity will follow that Ann took an Estate for Life Determinable upon her Dying without Issue Now the Rule is that a Testor shall never be supposed to intend Absurditys And therefore any Constr. having such a Tendency ought to be rejected Then I believe in all the Cases where Dying without *B316 Issue are construed Words of Determ an Estate of Inheritance was given before. Q Collenson & Wright seems not so
I beg Leave to observe further the Force of the Words Dying with’t Issue where they are general as here I know no Instance where they have not been adjudged to make an Estate tail And that sometimes ag’t a seeming Intention of the Testor to the contrary As where an express Estate for Life is first limited which is the Case of King & Melling 1 Vent. 214. 225. In Hales Time The Case was a Devise to the Son for Life And after his Decease to the Heirs of his Body by a 2. Wife And for Want of such Issue Rem’r over with a Proviso that the Son might make a Jointure to his 2. Wife Here was an express Estate for Life The Lim to the Issue was after the Sons Decease And there was a Power to make a Jointure which was unnecessary'if an Estate tail was intended Yet notwithstanding these Objections such was the Force & Operation of the Lim to the Issue And for Want of Issue Rem’r over that it was adj’d to make an Estate tail in the Son This is looked upon as a leading Case and the Authority of it has never been shaken
So in the Case of Shaw & Weigh FitzG. 7. heard in the House of Lords April 1729. which as to this Point was a Devise In Trust for his 2 Sisters during their Lives without committing Wast And if either of them happen to die leaving Issue or Issues Then in Trust for such Issue or Issues of the Mothers Share Or else in Trust for the Surviv’r or Survivors of them & their respective Issue or Issues And if both my said Sisters die without Issue & their Issue or Issues die without Issue Rem’r over Here it was obj. that an express Estate for Life was given & the restraining from committing Wast was a plain Indication in the Testor to pass no greater Estate for it would have been impertin’t to add such a Clause if he intended an Estate tail because such a Power is incident to an Estate tail And it could not be thought he would restrain from committing Wast And yet put it in their Power to alien the whole Land as Ten’t in tail might do by docking the Intail. There are other Circumstances in the Devise that are taken Notice of to prove the Testor intended only an Estate for Life But it was argued on the other [294] Side that the Word Issue in a Will is a Word of Lim & being devised first to the Sisters & afterwards to their Issue And for Want of Issue Rem’r over it made an Estate tail And so it was adjudged.
*B317 These Cases shew how forcible Issue or a Lim upon dying without Issue are in a .Will They create an Estate tail by Opera - tion of Law as Hale said in King & Melling supra Went. 232. ’Tis possible the Testor intended but an Estate for Life Yet by Consequence & Operation of Law it is an Estate tail according to the Rule in Shellys Case 1 Co. 99. Where the Ancestor takes an Estate of Freehold And there is a Lim afterwards to his Right Heirs or Heir of his Body that they are Words of Lim & not of Purchase Issue in a Will is equivalent to Heirs of the Body And it matters not whether an Estate given by Will be by Impl. or express Lim & therefore according to this Rule A Devise to one And if he die with’t Issue Rem’r over would make an Estate tail by Operation of Law if there was not so apparent an Intention from the Words as I conceive there is in the present Case. But we have no Occasion to rely on the Operation of Law Because no express Estate for Life is given And so our Case is stronger than either of those last cited.
I must not omit to mention the Case of Timson & Robertson Adj’d this Court which was a Devise to one & his Heirs And if he died before 23 or without Issue Rem’r over Here notwithstanding there was a seeming Intention to restrain the dying without Issue to the Age of 21. Yet it was held to be an Estate tail The words there in my humble Opinion were much stronger to create a contingent Fee than in this Case
Obj. The Testors Intention is plainly this First to give Ann an Estate for Life Then if she happen to die with’t Issue to Harwar Otherwise that is if she leaves Issue at her Death to her in fee And so she took a Fee simple upon the Contingency of leaving Issue at her Death
Ans. By this Constr. the natural Force & Import of the Words Dying with’t Issue must be rejected Had the Words been if she happen to die leaving no Issue or without Issue living or any other Word added to shew that he intended to restrain the generality of the Term Dying with’t Issue there might have been some Colour for such a Constr. But it being left absolute & at large here To make such Constr. must confound the Distinction that has been always kept up betw. a Lim upon dying with’t Issue generally & where it is restrained to a particular Time or tied up to some Contingency The Cases that I have cited and all the Cases that can be cited will shew they turn upon this Distinction. Besides as it was so easie for the Testor [295] to *B318 have added a Word or two in Case he had any such Intent It is reasonable to infer from his not doing so that he had no such Intent.
As for any Stress that may be laid upon the latter Words “ Otherwise to she & her Heirs for ever ” It has been answered already They might be thrown in thro’ the unskilfulness of the Writer Or they might be superadded to shew more expressly the Testors Intention to give Ann an Estate of Inheritance But then we say having made Use of the Word Issue before in the same Clause It is natural to conclude he meant the same Heirs in both Places
We think it apparent the Testor had an Intent to provide for Ann s Issue as well as herself That he never intended the Rem’r to Harwar sho’d take Place so long as there was any Issue of Ann And in Consequence that he intended the Issue sho’d have it in the mean time till the Rem’r took Place And then it is clearly an Estate tail We think this appears to be his first & primary Intent And we submit whether Constr. ought not to be made to serve that Intent rather than a different one prevail that will entirely destroy it And we hope it will be considered that this latter Constr. is to be inferred only from a few loose Words added perhaps by Chance And w'ch at the same time may very well bear an Interpretation consistent with the Constr. we contend for.
We rely on the Case of (a) Banks & Banks where superfluous
Words added after the Lim of the Estate tail were rejected Because the meaning of them was doubtful And upon the Case of Timson & Robertson where the' Words “ Dying before 21 ” were rejected to make way for the more express Intent collected from the Words Dying without Issue to make an Estate tail
Obj. But the Rem’r to Harwar gives him only an Estate for Life And it is absurd to suppose the Testor would give such an Estate after an Estate tail
A. This is no uncommon thing in Wills often (as has been observed) wrote in a hurry & without Council or Advice In the Case of Webb & Herring cited above the Estate given to the Dau’rs in case they survived the Son & his Heirs was expressly for their Lives Yet this was made no Obj. but adj’d an Estate tail in the Son Even where the Rem’r has been adj’d void in *B319 point of Lim Yet it has been adj’d an Estate tail by force of the Rem’r as Nottingham a Jennings ante 1 Sal. 233. So that nothing can be inferred from the Nature of the Estate given to Harwar to shew the Testors Intent one way or other
Obj. A latter Devise controul a former And here the latter Words give a fee
Ans. I agree where two Devises are inconsistent with each other As where by the first Land is given to A. & by the second to B. There [296] perhaps the latter Devise shall prevail That which is last wrote being presumed to be the Testors last Will & Mind But this Rule cannot hold where the same Thing is twice devised to the same Person There it is to be collected from the whole Will what Estate the Testor intended to pass And it is not always the last any more than the first that is regarded This is evident from the Case of Buck & Frenchman ante The 1. Devise was to the Heirs male the latter to the Heirs of the Body Yet it was held to be an Estate in tail male Here the first Words guided the Constr. In King & Remball ante Heirs are mentioned in the 1. Devise & Issue in the latter This was adj’d an Estate tail Here Constr. was made from the latter Words From these Instances it is plain that the Intent is collected from the whole Will And sometimes the first sometimes the last Words govern the Constr.
Obj. An express Estate shall not be destroyed by an Estate by Impl.
Ans. That is true taken thus: An Impl. of an Estate of Inheritance shall not ride over an express Lim of an Estate of Inheritance before 1 Vent. 230. per Hale This was I take it the reason of the Resolution in Popham & Bamfield 1 Sal. 236. Devise to A. for Life Rem’r to his first Son in tail male & so on to the tenth Son And if A. died without Issue male Rem’r over Here A. having an an Estate for Life & an Estate of Inheritance being limited to the Sons they could not collect a contrary Intent by Impl. to give A. an Estate tail.
But it is far from being a gen’l Rule that an Estate by Impl. shall never prevail ag’t an express Estate The contrary is evident from the Cases of King & Melling & Shaw & Weigh before remembered As well as from the Common Case of a Devise for Life And if he die with’t Issue Rem’r over which was never denied to make an Estate tail notwithstanding the express Estate for Life FitzG. 12. Apr. 1739. Judgm’t was given for the *B320 Deft. viz. that it was an Contingent Fee having been so adj’d once before in 1730. The Courts Opin. seemed to turn upon the Word Otherwise which they sayed shewed plainly an Intention to give a different Estate if Ann had Children.
For the Pit. Lee, Tayloe Custis & Digges
For the Deft. Lightfoot, Randolph Dandridge, Grymes Carter Byrd & Blair

 Ante 283.